# United States District Court

<u>   CENTRAL </u> DISTRICT OF <u> ILLINOIS   </u>

E-FILED
Tuesday, 22 April, 2008 10:13:52 AM
Clerk, U.S. District Court, ILCD

FILED
APR 2 1 2008
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA
V.

**CRIMINAL COMPLAINT**

CASE NUMBER 08-3021-m

ALEXANDER LEBRON-RIVERA
114 2nd Street
Apartment 2
Beardstown, IL
(Name and Address of Defendant)

  I, Scott Anderson, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about April 18, 2008 in Cass County, in the Central District of Illinois, the defendant did: knowingly transfer United States identification documents, to wit: three Social Security cards with social security numbers; and knowingly transfer in and affecting interstate commerce identification documents issued by a State or political subdivision of a State, to wit: three birth certificates which had been issued outside the State of Illinois, knowing that such identification documents were stolen.

All in violation of Title 18 United States Code, Section 1028(a)(2).

  I further state that I am a Special Agent and that this complaint is based on the following facts:

  see attached Affidavit

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

s/ Scott Anderson
_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

<u>April 21, 2008 2:45 pm</u>  at <u>Springfield, Illinois  </u>
Date              City and State

s/ Byron G. Cudmore

Honorable Byron G. Cudmore
<u>United States Magistrate Judge  </u>   _____
Name & Title of Judicial Officer        Signature of Judicial Officer

STATE OF ILLINOIS    )
                     ) ss
COUNTY OF SANGAMON )

## AFFIDAVIT

I, Scott Anderson, being duly sworn upon oath, depose and state as follows:

1. I am a Special Agent with the United States Secret Service (USSS) and have been so employed for approximately 6 ½ years.

2. In my employment, I am assigned, among other things, to investigate violations related to the illegal production, transfer and possession of identification documents, authentication features and false identification documents.

3. This affidavit is made in support of a criminal complaint against Alexander Lebron-Rivera for transferring stolen identification documents in violation of 18 U.S.C. §1028(a)(2).

4. On 04/17/08, the Springfield, IL Resident Office of the USSS received a telephone call from the Chief of the Beardstown Illinois Police Department, Thomas Schlueter, concerning information his agency had received from a confidential informant.

5. The confidential informant told Officer Derek Suttles of the Beardstown Police Department, that Alexander Lebron-Rivera had been telling his co-workers at Cargill Meat Solution Corporation that he had sets of identification documents for sale. These sets included a birth certificate and a Social Security card.

6. The confidential informant contacted Alexander Lebron-Rivera and they agreed that the informant could purchase three sets of identification documents from Alexander Lebron-Rivera for $1,800.00.

7. Chief Schlueter informed the USSS that this confidential informant has been reliable in the past, and all information he had received from the confidential informant had been corroborated to the fullest extent possible without compromising their investigations.

8. On 04/18/08, USSS Special Agents Matthew McWilliams and Demetri Malamis met with Chief Schlueter and Officer Suttles at the Beardstown Police Department. Chief Schlueter informed them that he had obtained $1,800.00 to be used to purchase identification documents and had photocopied the Federal Reserve notes to include the serial numbers. Chief Schlueter provided us with a driver's license image of Alexander Lebron-Rivera. Officer Suttles further explained that he has worked with the confidential informant in the past for drug related offenses. The information received from the confidential informant in the past had been reliable.

9. Continuing on this date, Officer Suttles and SA Demetri Malamis interviewed the confidential informant. In response to questions asked by SA Demetri Malamis, the confidential informant stated that Alexander Lebron-Rivera had advertised that he was selling identification documents. These documents include a birth certificate and matching Social Security card.

10. The confidential informant stated that Alexander Lebron-Rivera informed him that he had two sets of identification documents ready to sell. However, Alexander Lebron-Rivera could not find the other set because he had hidden the documents too well in his apartment. The sale price per set of identification documents was set at $600.00. The confidential informant stated he would call Alexander Lebron-Rivera to confirm that all three sets of documents were ready to be sold.

11. The confidential informant called a male at phone number 217-204-2426 who purported himself to be Alexander Lebron-Rivera. The male in the phone conversation told the confidential informant that he had two sets of documents ready to sell and would find the third set before the confidential informant arrived.

12. It should be noted that the phone number the confidential informant called is the same phone number as the cell phone which was in Alexander Lebron-Rivera possession at the time of his arrest.

13. Prior to the meeting with Alexander Lebron-Rivera, SA Demetri Malamis searched the confidential informant to ensure that the confidential informant did not have any contraband or documents in his possession.

14. The confidential informant voluntarily agreed to wear a recording device during the transaction. The USSS equipped the confidential informant with a recording and transmitting device that was used to overhear and record the conversation between the confidential informant and Alexander Lebron-Rivera.

15. At approximately 1430 hours on April 18, 2008, the confidential informant was dropped off near Alexander Lebron-Rivera's apartment located at 114 West 2nd Street, Beardstown, IL. SA Demetri Malamis maintained visual coverage of the confidential informant until the confidential informant entered the front entrance of the apartment building.

16. SA Demetri Malamis, while listening to the receiver which received the signals from the transmitter, overheard a conversation between the confidential informant and an individual who sounded like a male, and an individual who sounded like a female. SA Demetri Malamis heard the male voice tell the confidential informant that the documents were original. Alexander Lebron-Rivera said that the documents were faded because they were old, and it is important to know that in all Puerto Rican Social Security numbers, the second number is an eight. The male voice told the confidential informant that one set of documents had belonged to a woman from Puerto Rico, and another set had belonged to a male from New York. Also, the male voice told the confidential informant, that if the confidential informant gets stopped by the police, to tell the police officer that the confidential informant is making copies of the documents for a friend.

17. The confidential informant exited the apartment building and was picked up by Officer Heath White of the Beardstown Police Department. Officer White took possession of

the documents and confirmed that there were three sets of birth certificates and Social Security cards.

18. Visual surveillance was maintained on the apartment building. At approximately 1455 hours, Alexander Lebron-Rivera left his apartment building and Officer Suttles and SA Demetri Malamis made a positive identification of the individual as Alexander Lebron-Rivera. Alexander Lebron-Rivera was placed under arrest by the Beardstown Police Department.

19. Alexander Lebron-Rivera orally gave law enforcement officers permission to enter his apartment, 114 West 2nd Street, Apartment 2, Beardstown, IL. At approximately 1503 hours, Alexander Lebron-Rivera was read his Miranda warnings by a Beardstown Police officer and agreed to speak with the police officers.

20. At approximately 1508 hours, SA McWilliams read Alexander Lebron-Rivera his Miranda warning statement and Alexander Lebron-Rivera agreed to speak with agents of the USSS. Alexander Lebron-Rivera signed a consent to speak waiver (SSF 1737B).

21. At approximately 1515 hours, Alexander Lebron-Rivera signed a consent to search waiver (SSF 1922). A search of Alexander Lebron-Rivera's person revealed $1,800.00 in Federal Reserve notes. The Federal Reserve notes were matched by serial number to the photocopies of the Federal Reserve notes which were given to the confidential informant by the Beardstown Police Department.

22. A search of Alexander Lebron-Rivera apartment did not reveal any evidence relevant to this investigation.

23. In response to questions by Demetri Malamis, Alexander Lebron-Rivera stated he sold three sets of identification documents to an individual known to him only as "Sammy". These sets included a birth certificate and matching Social Security card. Alexander Lebron-Rivera stated he stole two sets of identification documents which belong to his mother and step-

father.  The other set of identification documents was found in a wallet at a gas station in Puerto Rico.  Alexander Lebron-Rivera further related to me that approximately two months ago he began telling his co-workers at Cargill Meat Solutions Corporation that he had identification documents for sale.  He approached "Sammy" and offered to sell him three sets of identification documents for $600.00 per set.  Alexander Lebron-Rivera stated he sold these documents of his own free will with no coercion and no threat of physical harm.  He further stated that he knew what he did was wrong and that he would not partake in criminal behavior again.

24.   SA Demetri Malamis asked Alexander Lebron-Rivera if he was willing to give a written statement so the content of their interview could be clearly represented.  Alexander Lebron-Rivera agreed to the written statement but asked that SA Demetri Malamis write the statement using Alexander Lebron-Rivera's words.  Together they completed the written statement, which was given to Alexander Lebron-Rivera and read to him.  He was asked if the statement was a true and accurate summary of what Alexander Lebron-Rivera had asked to be written for him.  Alexander Lebron-Rivera stated that it was, and signed the written statement.  SA Matt McWilliams and SA Demetri Malamis signed the statement as witnesses.

Further Your Affiant Sayeth Not.
s/ Scott Anderson

_____
Scott Anderson, Special Agent
United States Secret Service


Subscribed and sworn to before me
on this 21st day of April, 2008.   2:45 pm
s/ Byron G. Cudmore

_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE